IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ELAINA N.F.,[1]
     Plaintiff,

         v.                         Civil No. 3:21-cv-00067 (REP)

KILOLO KIJAKAZI,[2]
     Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Elaina N.F. ("Plaintiff") for disability insurance benefits, period of disability, and supplemental security income under the Social Security Act (the "Act"). Plaintiff was twenty-seven years old at the time of her application and previously worked as a cashier and food preparation assistant. (R. at 220, 242, 249.) Plaintiff alleges she is unable to work due to post-traumatic stress disorder ("PTSD"), bipolar disorder, dermatillomania, severe depression, anxiety, migraines, endometriosis, agoraphobia, opioid dependence, and obsessive-compulsive disorder. (R. at 241.)

On October 15, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 15.) This matter comes before the Court for a Report and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ erred in: (1) finding Plaintiff's PTSD a nonsevere impairment; and (2) evaluating the medical opinions of Karen L. Russell, Psy.D. ("Dr. Russell"), Susan C. Belyea, Ph.D. ("Dr. Belyea"), and James E. Sellman, M.D. ("Dr. Sellman"). (Pl.'s Mem. Supp. Mot. Summ. J. 1, 9-10, ECF No. 19 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on August 23, 2019, and for supplemental security income on May 21, 2020, alleging disability beginning November 15, 2015. (R. at 220, 222.) The Social Security Administration ("SSA") denied Plaintiff's claims on March 4, 2020 and again upon reconsideration on May 5, 2020. (R. at 145, 159.) Plaintiff requested a hearing before an ALJ, and a hearing was held on September 25, 2020. (R. at 172-73, 37-68.) On October 15, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 18-29.) Plaintiff requested review of the ALJ's decision, and on December 31, 2020, the SSA Appeals Council denied it and rendered the ALJ's decision as the final decision of the

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

Commissioner. (R. at 1-6, 214-16.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in

the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.925(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 20-29.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 15, 2015, her alleged onset date. (R. at 20.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "bipolar disorder, attention deficit hyperactivity disorder (ADHD), anxiety, and obsessive-compulsive disorder (20 CFR 404.1520(c) and 416.920(c))." (R. at 21.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-23.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 23.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform a full range of work with the following non-exertional restrictions:

> [T]he claimant is able to understand, remember and carry out simple and routine work related instructions, and concentrate for periods of two hours on work related tasks before requiring a break. She is able to perform non-production pace/non-assembly line pace jobs, with occasional workplace changes and occasional decision-making and no responsibility for the safety of others. She is able to work with the general public, coworkers, and supervisors occasionally.

(R. at 23.)

The ALJ explained that he determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior medical findings, in accordance with the regulations. (R. at 23.) Based on his residual functional capacity findings, the ALJ concluded at step four that Plaintiff is unable to perform any

past relevant work as actually or generally performed. (R. at 28.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 28.) In making his findings, the ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as dishwasher, housekeeper, and document preparer. (R. at 29.) Therefore, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 29.)

## V. ANALYSIS

Plaintiff argues two issues warrant remand. First, she alleges that the ALJ improperly classified Plaintiff's PTSD as a non-severe medical impairment and did not account for PTSD in his residual functional capacity findings. (Pl.'s Mem. at 8.) Second, she claims the ALJ's decision is not supported by substantial evidence because he rejected certain medical opinion evidence, particularly the opinions of Dr. Sellman, Dr. Russell, and Dr. Belyea. (Pl.'s Mem. at 1, 12.) Defendant argues that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's step two findings and his evaluation of the medical opinion evidence. (Def.'s Mem. at 3.) For the reasons that follow, this Court finds that the ALJ did not err, and substantial evidence supports the ALJ's decision to find Plaintiff not disabled under the Act.

### A. The ALJ Did Not Commit Reversible Error by Finding Plaintiff's PTSD Non-Severe.

Plaintiff argues that the ALJ: (1) erred in finding Plaintiff's PTSD to be non-severe; and (2) failed to consider Plaintiff's PTSD in determining Plaintiff's residual functional capacity. (Pl.'s Mem. at 8.) Plaintiff contends that "[m]ultiple health care providers have diagnosed PTSD and opined that [Plaintiff's] symptoms cause severe limitations." (Pl.'s Mem. at 9.) In response, Defendant asserts that the ALJ evaluated Plaintiff's PTSD in accordance with controlling agency regulations. (Def.'s Mot. Summ. J. and Mem. 11, ECF No. 20 ("Def.'s Mem.").)  Defendant

contends that the ALJ properly found that Plaintiff "failed to establish that her medically determinable mental impairments of depression, bipolar disorder, anxiety, panic disorder, eating disorder, and posttraumatic stress disorder were severe because they caused no more than 'mild' limitations in the four broad functional areas." (Def.'s Mem. at 11.) In the alternative, Defendant reasons that any error in considering Plaintiff's PTSD as non-severe is harmless because the ALJ found other impairments severe and properly formulated Plaintiff's residual functional capacity. (Def.'s Mem. at 14-15.)

  *1.  Legal Standard.*

  At the second step of the sequential evaluation, the ALJ considers whether the claimant has one or more medically determinable physical or mental impairments and, if so, determines whether they are "severe." 20 C.F.R. § 404.1521. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b).

  Pursuant to Social Security Ruling 85-28:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)
> . . . .
> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated

7

> in order to assess the effects of the impairment(s) on ability to do
> basic work activities . . . .

*See* SSR 85-28, 1985 SSR LEXIS 19 (Jan. 1, 1985).

Between steps three and four, the ALJ determines the claimant's residual functional capacity, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ first assesses the nature and extent of the claimant's physical and mental limitations and restrictions and then determines the claimant's residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). The residual functional capacity should be assessed "based on all the relevant evidence in [the claimant's] case record" and considering all of the claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a). The residual functional capacity must assess the claimant's work-related abilities on a function-by-function basis, including any relevant functions listed in 20 C.F.R. Sections 404.1545 and 416.945. SSR 96-8p, 1996 SSR LEXIS 5. "The assessment must also include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Britt v. Saul*, 860 Fed. App'x 256, 262 (4th Cir. 2021). In the Fourth Circuit, there is not a per se rule requiring remand for failure to perform an explicit function-by-function analysis; rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

Because ALJs are required to consider all of a claimant's medically determinable impairments when assessing the claimant's residual functional capacity, including those that are not severe, courts have held that errors when determining a medically determinable impairment is

not severe is harmless if the ALJ considers the not severe impairments in the ALJ's residual assessment. *See Ferrebee v. Saul*, No. 1:19CV1139, 2021 U.S. Dist. LEXIS 22142, 2021 WL 410886, at *5 (M.D.N.C. Feb. 5, 2021) ("Where an ALJ finds at least one severe impairment, any failure to identify more generally cannot constitute reversible error, because, upon determining that a claimant has one severe impairment, the ALJ must continue with the remaining steps in his disability evaluation."); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding an ALJ's failure to list a medically-determinable impairment as severe was harmless error where the ALJ "extensively discussed" and considered any limitations posed by the impairment in the fourth step of the analysis); *compare Hurtado v. Astrue*, No. 1:09-1073-MBS-SVH, 2010 U.S. Dist. LEXIS 84771, 2010 WL 3258272, at *14 (D.S.C. July 26, 2010) (remanding because second step finding was not supported by substantial evidence when ALJ failed to explain and discuss certain of claimant's impairments in the decision). Finding an impairment to be severe at the second step, does not require the ALJ to include any limitations arising from such impairment in the claimant's residual functional capacity. *Hughes v. Astrue*, No. 1:09cv459, 2011 U.S. Dist. LEXIS 110254, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011).

     2.   *The ALJ's Findings.*

The ALJ found that "all other impairments other than those enumerated above, alleged and found in the record, are non-severe, as they have been responsive to treatment and/or cause no more than minimal work-related limitations." (R. at 21.) Here, the ALJ did not sufficiently explain his conclusion that Plaintiff's PTSD is not severe at the second step. Rather, he made a conclusory statement that Plaintiff's PTSD had no more than a minimal effect on Plaintiff's ability to work without connecting such conclusion to any evidence in the record. Such error may be harmless if the ALJ nevertheless concluded that Plaintiff did have severe medical impairments, completed the

five-step inquiry to determine if Plaintiff is disabled, and properly considered Plaintiff's non-severe impairments when determining her residual functional capacity. *Ferrebee*, 2021 U.S. Dist. LEXIS 22142, 2021 WL 410886, at *5. A review of the ALJ's decision shows that the ALJ nonetheless accounted for Plaintiff's PTSD in his residual functional capacity analysis; therefore, the ALJ's failure to explain why he found Plaintiff's PTSD to be non-severe was harmless error.

In this case, the ALJ found that Plaintiff suffered from severe impairments in the form of bipolar disorder, anxiety, attention-deficit hyperactivity disorder, and obsessive-compulsive disorder. (R. at 21.) In effect, the ALJ considered all of the limiting symptoms connected with Plaintiff's mental health impairments – including PTSD – and crafted a residual functional capacity that accounted for Plaintiff's limitations in understanding, remembering, and carrying out simple and routine work-related instructions, concentrating, persisting, and maintaining pace; decision-making and interacting with others; and adapting to changes. (R. at 23-28.) The ALJ considered Plaintiff's hearing testimony regarding her mental health impairments as well as her subjective complaints during her examinations. (R. at 23, 27.) The ALJ appropriately focused on the objective medical evidence of Plaintiff's impairments, properly considering the anxiety, insomnia, and social impediments associated with Plaintiff's PTSD. The fact that the ALJ did not find Plaintiff's PTSD to be a severe impairment, but nonetheless accounted for its restrictions in his residual functional capacity assessment, does not constitute reversible error.

## B.  The ALJ Did Not Err When Evaluating the Medical Opinion Evidence.

Plaintiff next argues that the ALJ erred in rejecting the medical opinions of Dr. Sellman, Plaintiff's treating psychologist, and consultative examiners Dr. Russell and Dr. Belyea. (Pl.'s Mem. at 9-12.) As a result, Plaintiff contends that the ALJ's residual functional capacity was not based on a medical opinion. (Pl.'s Mem. at 12.) Defendant responds that substantial evidence

supports the ALJ's weighing of the opinion evidence, because the doctors' opinions were not supported by their own findings and were inconsistent with the other evidence in the record. (Def.' Mem. at 22-26.) Further, Defendant asserts that the ALJ was not required to rely on a "matching medical opinion to fashion the [residual functional capacity]." (Def.'s Mem. at 16.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1520c, 416.912, 416.927. When the record contains several medical opinions, the ALJ will not assign any weight, or defer to an opinion, but instead articulate the opinion's persuasiveness. § 404.1520c(a).

Historically, for claims filed before March 27, 2017, the ALJ gave a treating medical source's opinion controlling weight, if medically acceptable clinical and laboratory diagnostic techniques supported it and it comported with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p, 1996 SSR LEXIS 9. However, for claims filed on or after March 27, 2017, new regulations define what constitutes a medical opinion and how the Agency evaluates medical opinions. 20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2); *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384 n.8 (4th Cir. 2021). Here, Plaintiff filed for disability benefits after March 27, 2017, and, therefore, the new regulations apply. (R. at 220-22.)

The new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-

related limitations or restrictions" in the ability to perform physical, mental, or other demands of work activity or adapt to environmental conditions. § 404.1513(a)(2). According to the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." § 404.1520c(a).

Moreover, when the ALJ articulates the consideration of a medical source, it need not individually discuss the consideration of each medical opinion from a single medical source. § 404.1520c(b)(1). Rather, when a medical source provides multiple medical opinions, the ALJ will articulate the persuasiveness of those medical opinions together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5), as appropriate. § 404.1520c(b)(1). These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. § 404.1520c(c). Among the aforementioned factors, supportability and consistency carry the greatest import. § 404.1520c(b)(2). Importantly, when presented with multiple medical opinions from a medical source, the ALJ need not discuss each factor in determining the persuasiveness of a medical source, but only how the ALJ considered the supportability and consistency of a medical source's medical opinions, in relation to the other objective medical evidence. § 404.1520c(b)(2).

### 1. *Dr. Sellman's Opinion.*

Dr. Sellman is Plaintiff's psychotherapist and has treated her since 2013. (R. at 356, 358.) The record includes Dr. Sellman's progress notes from approximately March 2017 to August 2020 as well as his completed mental capacity assessment from August 17, 2020, in which he provided his medical opinion about Plaintiff's ability to do work related activities. (R. at 351-355, 356-57, 359-403.) The latter form asked Dr. Sellman to assess Plaintiff's mental abilities and aptitude

needed to do certain levels of work. (R. at 356-57.) The limitations are categorized as none, slight, moderate, marked, extreme, or unknown. (R. at 356.) A "moderate" limitation is defined as being "unable to function in this area, one third of an eight-hour work day." (R. at 356.) A "marked" limitation is defined as being "unable to function in this area, two thirds of an eight hour work day." (R. at 356.) An "extreme" limitation is being "unable to function in this area. There is no useful ability to function in this area." (R. at 356.)

Dr. Sellman's answers indicated that Plaintiff had moderate, marked, and extreme limitations in her abilities to sustain concentration and persist, socially interact, and adapt to changes. (R. at 356-57.) Specifically, he determined that Plaintiff was moderately limited in her ability to carry out short and simple instructions; perform activities within a schedule; maintain regular attendance and be punctual; make simple work-related decisions; ask simple questions or for assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and be aware of normal hazards and take appropriate precautions. (R. at 356-57.) Dr. Sellman opined that Plaintiff had marked limitations in her ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) sustain ordinary routines without special supervision; (4) interact appropriately with the general public; (5) maintain socially appropriate behavior; and (6) set realistic goals or plans. (R. at 356-57.) Finally, he determined that Plaintiff had extreme limitations in her ability to work in coordination with or in proximity to others without being distracted by them; complete a normal work day and week; perform at a consistent pace; get along with coworkers; and travel to unfamiliar places or use public transportation. (R. at 356-57.)

In addition to his answers on these areas of mental functioning, Dr. Sellman added that Plaintiff has a substance abuse problem, is not a malingerer, and would be absent four or more

days in an average month. (R. at 356-57.) In his accompanying memorandum, Dr. Sellman commented, "[Plaintiff] is totally disabled for the foreseeable future; to a reasonable degree of medical certainty." (R. at 358.)

The ALJ found Dr. Sellman's opinion to be "unpersuasive, overly restrictive, and unsupported by his own clinical findings including multiple unremarkable mental status examinations as well as reports of doing better, improvement and stability . . . ." (R. at 26, citing R. at 329-33, 351-55, 359-403.) The ALJ also explained that Dr. Sellman's opinion was "inconsistent with the longitudinal medical evidence of record as a whole, which supports no more than moderate limitations and the ability to perform work related activities at all exertional levels." (R. at 26.)

In challenging the ALJ's treatment of Dr. Sellman's medical opinions, Plaintiff appears to argue that the ALJ erred in his findings because Dr. Sellman treated Plaintiff since 2013 and his opinion is corroborated by the consultative examiners' reports. (Pl.'s Mem. at 9, 11-13.)  As discussed above, the regulations require that the ALJ explain how he considered the consistency and supportability of the medical opinion and why—based on the evidence—the ALJ reached the particular conclusion he did as to the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a)—(b). The ALJ satisfied that standard here.

In accordance with the regulations, the ALJ reviewed the medical evidence to ascertain the extent to which Dr. Sellman's opinion is supported by or inconsistent with his own medical findings as well as other medical evidence. The ALJ could properly discredit Dr. Sellman's opinions for lack of support if his own treatment notes do not support his findings. *See Stanley v. Astrue*, No. 2:06cv61, 2007 WL 4224734, at *7 (W.D. Va. Nov. 28, 2007) ("[B]ecause Dr. Spangler's opinion was not supported by his own findings, the ALJ correctly afforded it less

weight." ); *Mary R. v. Saul*, No. 3:19cv903, 2021 WL 388463, at *6 (E.D. Va. Jan. 19, 2021) (finding that an ALJ adequately addressed the supportability factor when the ALJ found that a medical provider's opinion "was less supported because [the provider] found extreme limitations even though he observed [the plaintiff] to be cooperative with good eye contact").

A review of the treatment notes shows the ALJ could reasonably conclude that Dr. Sellman's examination findings do not support the extreme limitations in his medical opinions. In his review of the record, the ALJ noted that Plaintiff's "subjective symptoms do not correlate with the objective findings in the medical evidence of record," which "provides multiple unremarkable mental status examinations." (R. at 27.) A review of those records for the relevant period indicates that Dr. Sellman's examinations repeatedly found Plaintiff to have intact insight, an appropriate mood, normal activity level, speech, and affect, and appropriate judgment, thought content, and eye contact. (R. at 27, citing R. at 359-403.) The ALJ also acknowledged that Plaintiff appeared at some appointments to be in a depressed mood and with disordered thought content. (R. at 27, referencing R. at 359, 362, 363, 373, 387, 388, 392.)

In October 2019, Plaintiff's panic attacks worsened, and she reported stress from losing her job and apartment. (R. at 370.) However, at her next appointment a month later, Plaintiff told Dr. Sellman that her panic attacks and migraine headaches decreased, and her activities of daily living improved. (R. at 332-33.) Upon assessment at that November appointment, Plaintiff indicated that her physical functioning, family and social relationships, mood, and sleep patterns were "better," and that she did not experience any side effects from medication or adverse events, such as nausea, itching, mental cloudiness, fatigue, or drowsiness. (R. at 333.) Her answers remained the same during a follow-up pain assessment review on December 9, 2019. (R. at 331.)

In his decision, the ALJ explained that "the degree of limitation alleged is not supported in the record" which showed "responsiveness to conservative treatment and medications, with improvement when complaint [sic]. . . ." (R. at 27.) Indeed, at her December 9, 2019 appointment with Dr. Sellman, Plaintiff relayed that she felt her medications made a "real difference in [her] life," and Dr. Sellman classified their impact on Plaintiff as "clinically significant." (R. at 331.) During her hearing, Plaintiff testified that she took her medications "religiously," although they made her feel fatigued. (R. at 48-49.) She explained that although her medications did not prevent her manic or depressive episodes entirely, they made them more predictable and allowed her to notify others that she may experience one so that they may take action to help her, if necessary. (R. at 49-50.)

The ALJ also discussed the consistency of Dr. Sellman's opinions. The regulations direct that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R.. § 404.1520c(c)(2). The ALJ found that Dr. Sellman's opinion is "inconsistent with the longitudinal medical evidence of record as a whole, which supports no more than moderate limitations and the ability to perform work related activities at all exertional levels." (R. at 26.) The ALJ noted that Plaintiff "continue[d] to perform numerous robust activities of daily living per hearing testimony, adult function report, and the medical evidence of record." (R. at 27.) The ALJ then offered examples, such as Plaintiff's ability to drive herself to the consultative examination in July 2018, her attainment of her GED and bartender's license, caring for and walking her dog outside, cooking, shopping, maintaining personal hygiene, and managing her finances. (R. at 27.) Plaintiff's adult function report detailed how she could prepare simple meals, dust, sweep, vacuum,

16

do laundry, read books, create artwork, watch television, spend time with her mother and friend, and attend her doctors' appointments. (R. at 27, 264-265.)

The ALJ acknowledged that Plaintiff "has some obvious limitations but not debilitating." (R. at 27.) Considering Dr. Sellman's findings, the ALJ reasonably determined that the extreme limitations Dr. Sellman attributed to Plaintiff's mental health impairments are not supported by his own examination findings as well as Plaintiff's own statements regarding her limitations and activities of daily living. (R. at 27.) Therefore, the ALJ's conclusion that Dr. Sellman's opinion is unsupported and inconsistent with the other evidence of record is supported by substantial evidence.

### 2. Dr. Russell's Opinion.

Dr. Russell, a consultative psychologist, completed a mental status evaluation of Plaintiff on July 12, 2018. (R. at 322-25.) In her report, Dr. Russell noted that Plaintiff drove herself to the examination, was alert and fully oriented, and presented as pleasant and polite. (R. at 324.) Further, Plaintiff appeared "to be somewhat relaxed and [was] observed to improve in her general anxiety as the evaluation progressed." (R. at 325.)  Plaintiff's speech reflected normal pace and volume and she had no difficulties with her fine or gross motor coordination. (R. at 324.) She exhibited adequate short-term and long-term recall and remote memory. (R. at 324.) Plaintiff told Dr. Russell that she lived with her boyfriend, regularly cleaned the house, cooked meals, and walked her dog. (R. at 323-24.) She told the examiner that she hoped to start volunteering at a local Humane society. (R. at 325.)

Dr. Russell found Plaintiff credible and to be an accurate historian, and noted Plaintiff's history of childhood trauma, sexual abuse, and drug addiction. (R. at 323.) She detailed Plaintiff's compulsive skin-picking, flashbacks, nightmares, panic attacks, hypervigilance, impulsiveness,

irritability, edginess, insomnia, low energy, depression, and difficulties in concentrating. (R. at 323-24.) Dr. Russell's diagnostic impression was that Plaintiff has "long-standing problems with anxiety" and "a number of symptoms suggestive of a number of different anxiety disorders, but [does] not necessarily meet criteria for one specific anxiety disorder." (R. at 324.) "She definitely has some features of a posttraumatic stress disorder," as well as "some features of agoraphobia, fear of leaving the home," but also wrote that Plaintiff "is able to go to a store" with her boyfriend or by herself for short periods of time. (R. at 325.) Dr. Russell found that Plaintiff had generalized anxiety and fear of her health and the health of her dog, obsessive-compulsive tendencies, such as "things having to be in a certain order" before she feels comfortable, an "extreme fear of abandonment," and problems with picking at her own skin and mood instability. (R. at 325.) She added that Plaintiff's "concentration levels would definitely be impacted by her anxiety disorder," and "[h]er anxiety and situational stress may increase." (R. at 325.) Dr. Russell indicated that Plaintiff's prognosis was "fair to guarded" and that she would benefit from mental health counseling in addition to psychiatric care. (R. at 325.)

Plaintiff argues that the ALJ erroneously rejected Dr. Russell's opinion, although she does not explain with specificity what the ALJ failed to have considered in his assessment. (Pl.'s Mem. at 12.) Plaintiff briefly notes that Dr. Russell opined that Plaintiff's anxiety symptoms would "definitely impact her ability to complete a normal workday," that Plaintiff "is not in a position to be able to work even part-time," and that Plaintiff "would likely become anxious and possibly bolt from work." (Pl.'s Mem. at 12.) Plaintiff then explains how Dr. Russell's opinions were "consistent with Dr. Belyea's findings." (Pl.'s Mem. at 12.) Presumably, then, Plaintiff argues that the ALJ erred by finding Dr. Russell's opinion unpersuasive despite its consistency with Dr. Belyea's and Dr. Sellman's opinions. (Pl.'s Mem. at 12.) Defendant argues in response that substantial evidence

18

supports the ALJ's fact finding and assessment of the persuasiveness of Dr. Russell's opinions. (Def.'s Mem. at 23.)

In this case, the ALJ gave sound reasons for his conclusion that Dr. Russell's opinion was "unpersuasive, mainly based on the claimant's subjective complaints, overly restrictive, and unsupported by her own clinical findings including [a] virtually unremarkable mental status examination and normal activities of daily living." (R. at 24.) As to the latter point, a review of Dr. Russell's report shows that her mental status consultative examination yielded mostly normal or otherwise unremarkable findings, such as alertness, full orientation, pleasantness, friendliness, politeness, adequate memory and insight, and normal speech. (R. at 24, citing to R. at 323-24.) Dr. Russell described Plaintiff's limitations and ascribed them to a "number of different anxiety disorders," but noted that she was able to do certain activities independently. (R. at 324-25.) Notably, Plaintiff told Dr. Russell that she began sleeping better after Dr. Sellman changed her medication, although she awakens every few hours with compulsive thoughts. (R. at 323.) As the ALJ noted, Dr. Russell's report appears to be derived almost entirely from Plaintiff's subjective complaints, which were accounted for, nonetheless, in the residual functional capacity assessment. (R. at 23-24.)

The ALJ articulated, in accordance with the regulations, why he found Dr. Russell's opinion to be unsupported by and inconsistent with the evidence. Plaintiff has failed to explain or otherwise show that the ALJ committed legal error in his assessment of Dr. Russell's opinion. As stated before, this Court may not undertake to re-weigh the evidence or substitute its judgment for that of the Commissioner. Therefore, Plaintiff's argument that the ALJ impermissibly rejected Dr. Russell's opinion is unavailing.

3.  *Dr. Belyea's Opinion.*

Dr. Belyea, a licensed clinical psychologist, completed a psychological evaluation of Plaintiff on December 10, 2019. Dr. Belyea noted that Plaintiff arrived on time and presented as "well-groomed and neatly dressed . . . ." (R. at 334, 338). She had an emotionally flat and blunted affect, and "the range of her affective responses was restricted." (R. at 338.) She was alert, oriented to the time, place and purpose of the evaluation and the evaluator, and her concentration and attention abilities were within normal limits. (R. at 338.) She had full short-term recall and expressed normal judgment and insight. (R. at 338-39.) Dr. Belyea noted Plaintiff's PTSD, depression, anxiety, and obsessive-compulsive disorder symptoms, including skin-picking, flashbacks and nightmares, panic attacks, hypervigilance, impatience, irritability, restlessness, sadness, unhappiness, low energy, concentration difficulties, hopelessness, insomnia, and feeling overwhelmed. (R. at 334.) Dr. Belyea described many of Plaintiff's life-altering events that resulted in physical and emotional instability, as well as her prior drug addiction. (R. at 334-342.) However, she concluded that Plaintiff was capable of completing activities of independent daily living, such as taking her medications, preparing light meals, maintaining her hygiene, completing chores, and managing her finances. (R. at 337.)

After summarizing Dr. Belyea's findings, the ALJ explained how he assessed Dr. Belyea's opinions, ultimately concluding that it was "unpersuasive, mainly based on the claimant's subjective complaints, overly restrictive, and unsupported by her own clinical findings including virtually unremarkable mental status examination and normal activities of daily living." (R. at 25.) The ALJ added that Dr. Belyea's opinion was "inconsistent with the longitudinal medical evidence of record as a whole, which supports no more than moderate limitations and the ability to perform work related activities at all exertional levels." (R. at 25.)

20

In accordance with the regulations, the ALJ articulated that Dr. Belyea's findings were inconsistent with her own mental status examinations, which were mostly unremarkable with the exception of a depressed mood and flat affect. (R. at 338.) Nonetheless, Plaintiff demonstrated "good reliability, direct eye contact, relevant and coherent speech, linear and logical thought processes, and normal attention, concentration, recall, insight, and judgment with no suicidal/homicidal ideations." (R. at 25, 338.) The ALJ also analyzed the consistency of Dr. Belyea's opinion with the other evidence in the record. Notably, Dr. Belyea's psychological evaluation occurred on December 10, 2019, a day after Plaintiff reported to Dr. Sellman that her activities of daily living were improving. (R. at 331, 334.) Upon review, the Court finds that the ALJ did not err when he found Dr. Belyea's findings unpersuasive and not supported by the record as a whole.

### 4. The ALJ's Residual Functional Capacity is Supported by Substantial Evidence.

Plaintiff finally argues that the ALJ's residual functional capacity finding is flawed because it "is [n]ot [b]ased on a [m]edical [o]pinion." (Pl.'s Mem. at 12.) As an initial matter, the ALJ explained in his opinion that he found the opinions of State Agency medical consultants Robert McGuffin, M.D., and David Bristow, M.D. "generally persuasive" and "generally consistent with the medical evidence of record as a whole." (R. at 26.) Nonetheless, Plaintiff argues that the ALJ's residual functional capacity is flawed because it "ignores the opinions of three mental health professionals" who treated or otherwise interviewed and examined her. (Pl.'s Mem. at 13.) In her prayer for relief, Plaintiff asks this court to "find the opinions of these providers . . . persuasive and to reverse the defendant's denial of benefits." (Pl.'s Mem. at 13.)

However, it is not within the province of this Court to re-weigh evidence or find substantial evidence supporting a finding contrary to the Commissioner's. *See e.g., Estep v. Richardson*, 459

F.2d 1015, 1016-17 (4th Cir. 1972) ("The Secretary's decision, if supported by substantial evidence must be affirmed even though the reviewing court believes that substantial evidence also supports a contrary result."). In this case, the ALJ carefully considered the entire range of medical evidence. *Craig v. Chater*, 76 F.3d at 594-95; SSR 16-3p, 2016 SSR LEXIS 4 at *6, 2016 WL 1119029, at *2 (Mar. 16, 2016); see also SSR 96-8p, 1996 SSR LEXIS 5 at *13, 1996 WL 374184, at *5 (July 2, 1996) (The residual functional capacity "assessment must be based on all of the relevant evidence in the case record."). It is not this Court's function to: (1) conduct a blank slate review of the evidence; (2) undertake to reweigh conflicting evidence; (3) make credibility determinations; or (4) substitute its judgment for that of the Commissioner. *Smith* 795 F.2d at 345; *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson*, 434 F.3d at 653. Therefore, Plaintiff's challenge to the ALJ's residual functional capacity based on the ALJ's assessment of the medical opinion evidence is unavailing.

## VI. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: May 5, 2022